# United States District Court
# Eastern District of Wisconsin

U.S. District Court
Wisconsin Eastern

MAY 05 2026

FILED
Clerk of Court

2 6 -C- 7 97

Case No. _____

---

*Mathiew R. Fox,*
*Plaintiff,*

*v.*

*Alexandra K. Smathers, in her official capacity and individual capacity only for nonjudicial conduct, if proven,*
*Heather Iverson, in her official capacity and individual capacity only for nonjudicial conduct, if proven,*
*Thomas W. Anderson Jr.,*
*Hollie White,*
*Sarah Fox,*
*Pathways Consulting, and*
*Professional Services Group,*
*Defendants.*

---

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, DAMAGES, DECLARATORY RELIEF, PROSPECTIVE RELIEF, AND JURY DEMAND
### *42 U.S.C. § 1983*

---

## I. Nature of the Action

1. This is a civil-rights action under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments.
2. Plaintiff brings this action for retaliation, denial of meaningful access to courts, procedural due-process deprivation, impairment of lawful parental-access efforts, and state-linked private conduct causing independent federal injury.
3. Plaintiff does not bring a federal appeal from any Wisconsin family-court order.
4. Plaintiff does not ask this Court to decide custody, placement, child support, contempt, injunction, subpoena, evidentiary, provider, criminal, employment, publication, or domestic-relations merits.
5. Plaintiff does not ask this Court to reverse, vacate, modify, correct, or supervise any Wisconsin state-court order.
6. Plaintiff challenges independent federal injuries caused by conduct separate from the correctness of any state-court ruling.
7. Plaintiff engaged in protected petitioning, reporting, preservation, provider-record, medical-record, provider-conflict, appellate, writ-related, OLR-related, Judicial Commission-related, DSPS-related, and HHS/OCR-related activity.
8. Defendants knew or had reason to know of that protected activity through hearings, filings, docket entries, preservation notices, provider communications, trial testimony, contempt proceedings, appellate filings, writ-related filings, criminal-track proceedings, injunction proceedings, and related complaint channels.
9. Protected activity later appeared in contempt, provider, criminal, injunction, employment, financial, and parental-access consequences.
10. The federal injury is not that Plaintiff lost state-court rulings.
11. The federal injury is that protected activity, provider-conflict objections, record-preservation efforts, and lawful parental-access efforts were used, burdened, restricted, or routed through unclear processes that impaired Plaintiff's federal rights.
12. Plaintiff seeks damages only from nonimmune defendants for nonimmune conduct.
13. Plaintiff does not seek damages from judicial officers for protected judicial acts, rulings, orders, findings, hearing management, trial management, docket control when adjudicative, or ordinary judicial functions.

2

14. Plaintiff seeks prospective declaratory relief and narrow prospective relief only to remedy ongoing federal constitutional injury, and only where permitted by 42 U.S.C. § 1983.
15. Plaintiff demands a jury trial.

## II. Jurisdiction and Venue

16. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.
17. This Court has civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3).
18. Plaintiff brings this action under 42 U.S.C. § 1983.
19. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.
20. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b)(2) because a substantial part of the events occurred in Kenosha County, Wisconsin.
21. Supplemental jurisdiction exists under 28 U.S.C. § 1367 to the extent any related state-law issue is later pleaded or construed from the same nucleus of operative fact.

## III. Parties

### A. Plaintiff

22. Plaintiff Mathiew R. Fox is a Wisconsin resident.
23. Plaintiff is the father of the children involved in Kenosha County Circuit Court Case No. 2021FA000047.
24. Plaintiff sought lawful adjudication, review, record access, provider-record protection, provider-conflict review, medical-record access, contempt defense, parental-access enforcement, and preservation of evidence in that case.

### B. Defendant Alexandra K. Smathers

25. Defendant Alexandra K. Smathers is a Kenosha County Circuit Court Commissioner.
26. Smathers acted under color of state law when performing official court-related functions.
27. Plaintiff sues Smathers in her official capacity for prospective declaratory relief and narrow prospective relief permitted by § 1983.
28. Plaintiff sues Smathers in her individual capacity only for nonjudicial, extra-judicial, administrative, retaliatory, or otherwise nonimmune conduct, if proven.
29. Plaintiff does not seek damages from Smathers for judicial acts, rulings, orders, findings, hearing management, contempt decisions, docket control when adjudicative, or ordinary adjudicative conduct.

3

## C. Defendant Heather Iverson

30. Defendant Heather Iverson is a Kenosha County Circuit Court Judge.

31. Iverson acted under color of state law when performing official court-related functions.

32. Plaintiff sues Iverson in her official capacity for prospective declaratory relief and narrow prospective relief permitted by § 1983.

33. Plaintiff sues Iverson in her individual capacity only for nonjudicial, extra-judicial, administrative, retaliatory, or otherwise nonimmune conduct, if proven.

34. Plaintiff does not seek damages from Iverson for judicial acts, rulings, orders, findings, hearing management, trial management, contempt decisions, provider decisions, docket control when adjudicative, or ordinary adjudicative conduct.

## D. Defendant Thomas W. Anderson Jr.

35. Defendant Thomas W. Anderson Jr. is a private attorney who represented Sarah Fox during portions of the family-court proceedings.

36. Plaintiff does not sue Anderson merely because he represented Sarah Fox, filed motions, issued subpoenas, introduced exhibits, made arguments, cross-examined witnesses, or took ordinary litigation positions.

37. Plaintiff sues Anderson only for conduct that discovery and trial evidence will prove involved joint participation, use of state authority, ratification, conspiracy, or state-linked conduct causing federal injury.

38. Anderson had notice of Plaintiff's protected activity through hearings, filings, OLR-related notices, provider-conflict objections, preservation-related materials, provider-record objections, trial motion practice, and White-related proceedings.

39. Anderson introduced, subpoenaed, relied on, or used White-related and provider-related material after White's disputed role, provider connections, adverse status, and connection to Plaintiff's protected reporting activity were placed on the record.

## E. Defendant Hollie White

40. Defendant Hollie White is a private actor.

41. Plaintiff does not sue White merely because she was a witness, private complainant, injunction petitioner, former intimate partner, provider employee, or adverse participant in state proceedings.

42. Plaintiff sues White only for conduct that discovery and trial evidence will prove involved state action, joint participation, conspiracy, ratification, or use of state authority causing federal injury.

4

43. White's role is material because the record places her at the intersection of the family-court case, the Pathways/Professional Services Group provider ecosystem, Plaintiff's protected reporting activity, criminal-track proceedings, injunction proceedings, and employment-related harm.

### F. Defendant Sarah Fox

44. Defendant Sarah Fox is a private actor and a party to the underlying family-court proceedings.

45. Plaintiff does not sue Sarah Fox merely because she was an opposing party, filed motions, testified, communicated with providers, made allegations, or took litigation positions.

46. Plaintiff sues Sarah Fox only for conduct that discovery and trial evidence will prove involved state action, joint participation, conspiracy, ratification, or use of state authority causing federal injury.

47. Sarah Fox had notice of Plaintiff's protected activity through family-court filings, OFW communications, provider-conflict objections, contempt proceedings, trial proceedings, provider communications, and White-related communications.

## G. Defendants Pathways Consulting and Professional Services Group

48. Defendants Pathways Consulting and Professional Services Group are private provider entities.

49. Plaintiff does not sue either provider merely because it provided therapy, employed a person later involved in litigation, received communications, maintained records, received preservation notices, or had records or employees referenced in court.

50. Plaintiff sues Pathways Consulting and Professional Services Group only to the extent discovery and trial evidence prove state action, joint participation, conspiracy, ratification, misuse of state authority, provider-record conduct, or employee-linked conduct causing federal injury.

51. Plaintiff pleads provider-record, privacy, preservation, HHS/OCR-related, and disclosure-related facts as evidence of protected activity, notice, process impairment, record-access injury, causation, and state-linked private-actor context.

52. Plaintiff does not plead HIPAA as a standalone private federal damages claim.

## IV. Federal Limits and Immunity Safeguards

53. Plaintiff does not seek federal review of any Wisconsin state-court judgment.

Case 2:26-cv-00797-BHL    Filed 05/05/26    Page 5 of 28    Document 1

54. Plaintiff does not seek reversal of any custody, placement, contempt, injunction, subpoena, evidentiary, provider, criminal, employment, publication, or family-court ruling.

55. Plaintiff could prevail on these federal claims without altering any state-court custody, placement, contempt, injunction, evidentiary, provider, criminal, employment, publication, or family-court order.

56. Plaintiff does not ask this Court to award custody or placement.

57. Plaintiff does not ask this Court to set or modify child support.

58. Plaintiff does not ask this Court to determine the children's best interests.

59. Plaintiff does not ask this Court to adjudicate contempt.

60. Plaintiff does not ask this Court to modify any injunction.

61. Plaintiff does not ask this Court to suppress evidence, supervise providers, discipline judges, discipline attorneys, discipline providers, or direct Wisconsin family-court proceedings.

62. Plaintiff does not ask this Court to enjoin, dismiss, stay, interfere with, or supervise any pending criminal prosecution, contempt proceeding, injunction proceeding, or family-court merits issue.

63. Criminal-track facts are pleaded only as evidence of motive, causation, damages, protected-activity use, record-access impairment, provider-access impairment, and state-linked private-actor context.

64. Judicial officers are not sued for damages for judicial acts.

65. Private actors are not liable under § 1983 merely because they were adverse to Plaintiff or participated in state litigation.

66. Private-actor liability is pleaded only where trial evidence establishes state action, joint participation, conspiracy, ratification, or use of state authority causing constitutional injury.

67. Oversight complaints, record requests, preservation notices, appellate filings, writ-related filings, provider-record communications, and criminal-track facts are pleaded as protected activity, notice, causation, attempted remedies, and evidence of federal injury.

## V. Factual Allegations

### A. Record and evidence conventions

68. Plaintiff will prove these claims through certified transcripts, filed motions, filed orders, docket entries, provider communications, email records, audio recordings, video recordings, body-camera footage, trial exhibits, law-enforcement records, provider records, appellate records, and witness testimony.

6

69. Plaintiff cites state-court transcripts and filings as record anchors for protected activity, notice, causation, adverse action, and injury.
70. Plaintiff does not cite those materials to ask this Court to decide whether Wisconsin state courts correctly ruled on custody, placement, contempt, injunction, provider, subpoena, evidentiary, criminal, or family-court merits.
71. The cited records matter because they show what Defendants knew, when Defendants knew it, what process existed or failed to exist, how protected activity was used, and how injury followed.

## B. Provider pipeline and early notice

72. On January 21, 2025, Anderson stated that the Guardian ad Litem had spoken to the children and that those disclosures "basically gave rise to the temporary order," primarily based on disclosures made directly to the GAL. Tr. 1-21-25:4:20-25 (R.192).
73. Anderson stated that comments were also made by the children to Sarah Fox after they spoke with the GAL. Tr. 1-21-25:5:19-22 (R.192).
74. Anderson stated that Sarah Fox had gotten both children into doctors and counseling, and that the son had been diagnosed with PTSD and was starting counseling. Tr. 1-21-25:7:10-16 (R.192).
75. The GAL stated that she began her investigation by obtaining police reports. Tr. 1-21-25:11:14-16 (R.192).
76. The GAL referenced a restraining order involving a former girlfriend. Tr. 1-21-25:11:17-20 (R.192).
77. The GAL stated that she requested a CPS investigation and that CPS unsubstantiated maltreatment. Tr. 1-21-25:15:10-14 (R.192).
78. The court restricted Plaintiff from contacting the therapist, stating, "At this time, he's not to contact the therapist." Tr. 1-21-25:45:6-8 (R.192).
79. That structure allowed provider information to enter the family-court process while Plaintiff's direct provider contact was restricted.
80. That structure made Sarah Fox and court-connected channels central to the flow of provider information relevant to parental access.

## C. Provider-conflict notice

81. On March 4, 2025, Anderson identified the children's providers: "Michael is Elizabeth at PSG in Kenosha. Eden has Jess at Pathways Consulting." Tr. 3-4-25:15:1-3 (R.191).
82. Plaintiff's counsel raised a conflict concern involving another therapist in the same facility as Plaintiff's former girlfriend. Tr. 3-4-25:12:11-14 (R.191).

7

83. Counsel explained the internal "staffing" concern: when providers staff a case, they discuss cases, and another therapist may hear information that could feed into treatment. Tr. 3-4-25:12:18-25 (R.191).

84. The record confirmed that the facility overlap involved a former girlfriend who was "one of the therapists." Tr. 3-4-25:15:15-18 (R.191).

85. The court rejected the concern, stating that the parties were dealing with professionals and a code of ethics and that the court did not share the concern. Tr. 3-4-25:15:23-25 (R.191).

86. By March 4, 2025, the court and parties had record notice of a provider-conflict theory involving PSG, Pathways, internal provider staffing, and an adverse former partner connected to the provider environment.

87. Plaintiff uses this sequence to prove notice, foreseeability, causation, and the origin of the provider-conflict issue.

88. Plaintiff does not ask this Court to decide which provider should have treated the children.

## D. Protected reporting and contempt sequence

89. Plaintiff engaged in protected activity by filing motions, objecting to provider conflict, contacting oversight bodies, preserving evidence, requesting records, and pursuing review.

90. On May 29, 2025, the GAL stated that Our Family Wizard workers had been sent a link and placed it in visitation notes where they had access to more videos than the GAL could see publicly. Tr. 5-29-25:5:8-10 (R.156).

91. The GAL stated that she received emails containing private YouTube videos. Tr. 5-29-25:5:11-13 (R.156).

92. On May 29, 2025, the court prohibited social-media posting and expanded the restriction to YouTube, stating, "No social media. No web pages." Tr. 5-29-25:13:15-22 (R.156).

93. On June 11, 2025, Anderson identified the social-media restriction as prohibiting dissemination of information concerning the case or minor children, including Facebook, YouTube, X, Twitter, Snapchat, and other forms of social media. Tr. 6-11-25:3:17-25 (R.157).

94. Anderson filed the contempt motion that placed Plaintiff's communications and videos at issue. Tr. 6-11-25:3:11-15 (R.157).

95. At the June 11, 2025 hearing, Plaintiff testified that he sent videos or materials to state representatives, OLR-related recipients, the Wisconsin Supreme Court, law firms, and Wisconsin legislators. Tr. 6-11-25:14:15-22 (R.157).

Case 2:26-cv-00797-BHL    Filed 05/05/26    Page 8 of 28    Document 1

96. Plaintiff clarified that the recipients were specific recipients, not the public. Tr. 6-11-25:14:23-24 (R.157).
97. Plaintiff explained that he contacted OLR because he believed the process was unfair and that written letters preceded later videos. Tr. 6-11-25:15:17-20; 15:25-16:2 (R.157).
98. The June 11, 2025 transcript also reflects that Plaintiff sent material to CPS/Lisa Retzlaff and to Out & About staff. Tr. 6-11-25:27:12-14; 27:20-24; 29:7-9 (R.157).
99. The court rejected a public/private distinction and found willful and knowing disregard of court orders. Tr. 6-11-25:31:3-12 (R.157).
100. Plaintiff does not ask this Court to review the contempt ruling.
101. Plaintiff uses the contempt sequence to prove that protected reporting, preservation, and oversight communications were known to court and litigation actors and were treated as adverse conduct.

### E. Cross-system escalation
102. On June 26, 2025, Anderson referenced "a potential other ongoing criminal investigation" in the family-court proceeding. Tr. 6-26-25:4:16-18 (R.177).
103. Anderson acknowledged receiving notice from OLR concerning a grievance against him and referenced a letter sent to the Court and filed with OLR. Tr. 6-26-25:4:20-24 (R.177).
104. The GAL referenced Plaintiff contacting DCFS again and video sent to DCFS. Tr. 6-26-25:7:13-23 (R.177).
105. The court tied future compliance to visitation consequences. Tr. 6-26-25:10:15-11:9 (R.177).
106. By June 26, 2025, protected complaints, provider-related concerns, criminal-investigation references, and parental-access consequences appeared in the same procedural lane.
107. Plaintiff uses this sequence to prove notice, causation, and the merger of protected reporting with parental-access consequences.
108. Plaintiff does not ask this Court to decide whether any DCFS, OLR, or criminal matter was substantively correct.

### F. July 31 provider-preservation and non-contact clarification
109. On July 31, 2025, Plaintiff placed on the 2021FA47 record an affidavit concerning non-contact intent and provider-preservation activity. R.148.

9

110. The affidavit stated that, on or about July 28, 2025, Plaintiff sent a HIPAA preservation letter to Pathways and Professional Services Group, two organizations he identified as professionally affiliated with White. R.148 at 1.

111. Plaintiff stated that the purpose was to assert rights, request a litigation hold, and ensure that the children's health information was not accessed or disclosed unlawfully by White or her employer. R.148 at 1-2.

112. Plaintiff stated that the communication was addressed to the organizations directly, not to White personally. R.148 at 2.

113. Plaintiff stated that the communication was not an attempt to contact White directly or indirectly for harassment, intimidation, or any purpose prohibited by the injunction. R.148 at 2.

114. Plaintiff requested that the court reopen and clarify the injunction because lawful preservation activity could be mischaracterized as prohibited contact. R.148 at 2-3.

115. Plaintiff filed a July 30, 2025 email exchange with Pathways Consulting. R.149.

116. Pathways' clinic director responded that the practice follows Wisconsin law for preserving client records and that minor records are maintained for seven years past the age of eighteen. R.149 at 1.

117. Plaintiff asked Pathways to confirm whether notes, reports, or correspondence related to the children remained in its possession or were preserved under that policy. R.149 at 1.

118. Plaintiff stated that the request was for legal and evidentiary preservation purposes. R.149 at 1.

119. Plaintiff also filed a July 31, 2025 email exchange with Pathways. R.150.

120. Pathways asked Plaintiff to identify his legal standing before it looked into the existence of any records. R.150 at 1.

121. Plaintiff responded that he was not requesting confidential mental-health records at that time. R.150 at 1.

122. Plaintiff stated that he was notifying Pathways of ongoing custody litigation and requesting preservation of records, internal communications, diagnoses, case notes, and documentation referencing the children or the third party's involvement. R.150 at 1.

123. Plaintiff stated that the email was a preservation notice only and that any access request would proceed through legal channels, including subpoenas and protective orders. R.150 at 1.

10

124. These filings prove that Pathways had direct notice of preservation concerns before the later subpoena, provider-record, White-related, and trial sequences.

125. Plaintiff does not assert that a preservation notice alone creates state action.

## G. August 13 Anderson/White bridge

126. On August 13, 2025, Plaintiff framed due-process concerns and identified provider-conflict concerns tied to Pathways and PSG. Tr. 8-13-25:8:8-9:25; 10:1-11 (R.193).

127. Plaintiff described the mechanism of influence inside the provider system and referenced litigation holds sent to the providers. Tr. 8-13-25:10:12-11:15; 14:1-8 (R.193).

128. Anderson stated that a third party provided information leading him to believe a contempt motion needed to be filed. Tr. 8-13-25:14:24-15:2 (R.193).

129. The court clarified that "White" was the person Anderson had spoken with, and Anderson confirmed. Tr. 8-13-25:15:19-16:18 (R.193).

130. Plaintiff identified the person as Hollie White. Tr. 8-13-25:16:3-8 (R.193).

131. Plaintiff identified concerns involving Sarah Fox's access to the children's Our Family Wizard communications. Tr. 8-13-25:17:11-19:7 (R.193).

132. The transcript identified Eric Kurkowski as Sarah Fox's romantic partner and a Kenosha Police detective. Tr. 8-13-25:22:16-23:2 (R.193).

133. The court repeatedly deferred disputed issues to trial. Tr. 8-13-25:34:10-38:2 (R.193).

134. The August 13 hearing supplies a record bridge between Anderson, White, provider-conflict issues, and court enforcement activity.

135. Plaintiff does not assert that ordinary witness contact or attorney investigation is unlawful by itself.

## H. August 28 provider-record motions

136. On August 28, 2025, Plaintiff filed an emergency motion to stay subpoena compliance, sequester or seal any produced provider material, require counsel certification, and set in-camera review with a qualified protective order. R.173.

11

137. The motion identified the children's mental-health providers as Pathways Consulting/Jessica Dorner and Professional Services Group/Elizabeth Gamboa-Reynolds. R.173 at 1.

138. Plaintiff requested a temporary stay of subpoena compliance pending hearing. R.173 at 1.

139. Plaintiff requested that any already-produced materials be sequestered, not reviewed, not copied, and lodged under seal for in-camera review. R.173 at 1-2.

140. Plaintiff requested that Anderson certify whether he or his agents had received provider materials, identify the date, source, and method of receipt, and confirm sequestration and lodging under seal. R.173 at 2.

141. Plaintiff requested a qualified protective order limiting use to the family-court case, prohibiting redisclosure, requiring sealed filing, requiring return or destruction at the end of litigation, and excluding psychotherapy process notes absent a specific order. R.173 at 2.

142. The same filing included records-custodian hold and production instructions to Pathways and PSG. R.173 at 6-8.

143. Plaintiff instructed each provider to preserve materials relating to the children and refrain from disclosing protected health information unless and until ordered by the court. R.173 at 6-8.

144. Plaintiff requested court-only sealed production for in-camera review if disclosure were authorized. R.173 at 6-8.

145. Also on August 28, 2025, Plaintiff filed a motion to quash or modify subpoenas duces tecum and for protective order. R.174.

146. The motion stated that Anderson caused subpoenas to be served on Jessica Dorner at Pathways and Elizabeth Gamboa-Reynolds at PSG, commanding them to appear for trial and produce "all records and notes" for the children. R.174 at 1.

147. Plaintiff objected that the subpoenas sought privileged mental-health materials, lacked HIPAA safeguards, were overbroad, risked therapeutic harm, and could be addressed through less restrictive alternatives. R.174 at 1-2.

148. Plaintiff requested in-camera review, narrowed production, exclusion of psychotherapy process notes, sealed filing, no redisclosure, and return or destruction after litigation. R.174 at 1-3.

149. Plaintiff does not ask this Court to decide whether the subpoenas were proper under Wisconsin law.

12

150. Plaintiff uses R.173 and R.174 to prove protected provider-record objections, preservation activity, notice, and process impairment.

## I. September 22 White motions

151. On September 22, 2025, Plaintiff filed a motion in limine to exclude Hollie White's testimony. R.201.

152. Plaintiff argued that White lacked direct knowledge of Plaintiff's current parenting or the children's best interests. R.201 at 1-3.

153. Plaintiff argued that White's connection arose from a prior personal relationship and her role as a Pathways/PSG employee. R.201 at 1-3.

154. Plaintiff argued that White's testimony risked unfair prejudice, character evidence, collateral TRO issues, and confusion of custody issues. R.201 at 1-3.

155. The supporting affidavit stated that White had an active TRO through February 2026. R.201 at 4-5.

156. The affidavit stated that White had a personal history with Sarah Fox. R.201 at 4-5.

157. The affidavit stated that prior counsel warned that PSG/Pathways posed a conflict because of White's employment. R.201 at 4-5.

158. On the same date, Plaintiff filed a motion to quash the subpoena issued to Hollie White, identified as "Hollie Elizabeth White - Pathways Consulting." R.203 at 1.

159. Plaintiff argued that White was adverse, was not a neutral witness, had a relationship with Sarah Fox, and was connected to PSG/Pathways. R.203 at 1-4.

160. Plaintiff uses R.201 and R.203 to prove pretrial notice, protected objection, provider-conflict chronology, and causation.

161. Plaintiff does not ask this Court to decide whether White should have been excluded as a witness in state court.

## J. September trial: provider and White evidence

162. At the September 29, 2025 trial, Plaintiff raised that Pathways and PSG were third-party involvement and connected that concern to the March 4 hearing. Tr. 9-29-25:14:23-15:16 (R.312).

163. Sarah Fox testified that she contacted Hollie White on Instagram, met with her, asked about the children, and became friends with her. Tr. 9-29-25:39:22-40:7 (R.312).

13

164. Sarah Fox testified that White showed her a DSPS complaint that Plaintiff had sent concerning White's licensing. Tr. 9-29-25:40:19-41:5 (R.312).

165. Sarah Fox testified that the children needed services through companies where White worked and identified Pathways Consulting and Professional Services Group. Tr. 9-29-25:42:7-16 (R.312).

166. Sarah Fox testified that White had an office for Pathways Consulting. Tr. 9-29-25:42:17-22 (R.312).

167. Sarah Fox testified that she understood White worked at PSG at some point. Tr. 9-29-25:62:8-24 (R.312).

168. Michael's therapist testified that Sarah Fox reached out to PSG for therapy services and later contacted the therapist again for individual therapy. Tr. 9-29-25:97:19-98:2 (R.312).

169. Michael's therapist testified that her knowledge of family dynamics came from Sarah Fox. Tr. 9-29-25:103:19-23 (R.312).

170. Michael's therapist testified that White worked for PSG and that they worked for the same agency, though not directly in the same program. Tr. 9-29-25:105:25-106:21 (R.312).

171. Eden's therapist testified that she worked with Pathways Consulting. Tr. 9-29-25:112:15-19 (R.312).

172. Anderson called Hollie White as a petitioner's witness and examined her about the prior relationship, the children, the restraining order, police reports, and provider employment. Tr. 9-29-25:159:5-160:25; 171:1-179:15 (R.312).

173. White testified about her PSG and Pathways employment. Tr. 9-29-25:171:1-172:12 (R.312).

174. White testified that she and Sarah Fox communicated after the DSPS issue and communicated consistently. Tr. 9-29-25:173:18-174:10 (R.312).

175. White testified that she knew Michael's therapist and knew about Michael's treatment because emails to her employer included her. Tr. 9-29-25:174:16-175:10 (R.312).

176. White testified that Sarah Fox was a witness in one police report. Tr. 9-29-25:176:1-20 (R.312).

177. Anderson elicited that he had spoken to White before trial once, in relation to a posted video. Tr. 9-29-25:178:17-22 (R.312).

178. White testified that her appearance on Anderson billing invoices was due to that phone call. Tr. 9-29-25:179:6-15 (R.312).

14

179. On September 30, 2025, Anderson called Clarissa Losey from Out & About. Tr. 9-30-25:5:17-16:23 (R.333).

180. Losey testified that Out & About provided supervised community visitation, visits were recorded using body cameras, visits began around the beginning of the year, and the last visit occurred around the beginning of August. Tr. 9-30-25:5:17-6:25; 7:1-3 (R.333).

181. Losey testified that Out & About stopped providing services after disputes concerning policy compliance and Plaintiff's request to change how the provider coded acceptance-and-decline entries. Tr. 9-30-25:7:4-8:25 (R.333).

182. Plaintiff testified that proposals for gradual reunification were sent to Anderson and that Anderson did not respond. Tr. 9-30-25:103:1-104:4 (R.333).

183. The September 29 and 30, 2025 order later awarded Sarah Fox sole legal custody and primary physical placement and ordered supervised secondary physical placement through Hope Council for one to two hours once per week. R.258.

184. Plaintiff does not ask this Court to alter that order.

185. Plaintiff uses the order only as an injury and causation anchor.

## K. Criminal-track overlap

186. The later criminal case absorbed family-court contempt, provider-conflict, YouTube, employer/provider communication, Pathways/PSG, and Hollie White facts into a criminal-track narrative.

187. At the December 4, 2025 initial appearance in State v. Fox, 25-CF-1639, the State identified Hollie White as the complaining witness. Tr. 12-4-25:3:4-7.

188. The State tied the alleged conduct to Plaintiff's custody battle and Sarah Fox's placement/custody request. Tr. 12-4-25:5:6-10.

189. The State described licensing-board and employer contacts as part of the criminal narrative. Tr. 12-4-25:5:11-16.

190. Defense counsel stated that White's employer was also the provider of services for Plaintiff's children, and that Plaintiff's request concerned White's affiliation with Pathways and access to his children. Tr. 12-4-25:9:22-10:3.

191. The criminal court imposed a no-contact condition extending to White's employer. Tr. 12-4-25:12:9-12.

15

192. At the January 8, 2026 preliminary hearing, the officer testified that Pathways Consulting and Professional Services Group were White's employers. Tr. 1-8-26:8:11-14.

193. The officer testified that White "does not have access" to Plaintiff's children's files "due to the conflict of interest." Tr. 1-8-26:8:5-9.

194. The officer testified that emails were directed at Pathways or the other counseling service and sent to the employer, not directly to White. Tr. 1-8-26:11:18-23.

195. The officer testified that nothing threatening was listed in the criminal complaint. Tr. 1-8-26:13:9-11.

196. The officer testified that he did not know that any shown information was non-public. Tr. 1-8-26:14:20-23.

197. The officer testified that the intimidation theory appeared to be based on White's words or feelings. Tr. 1-8-26:15:9-16:14.

198. Plaintiff does not ask this Court to review the bindover decision, suppress evidence, dismiss charges, modify bond, or interfere with the criminal prosecution.

199. Plaintiff uses the criminal-track facts to prove that family-court, provider, and protected-reporting facts later intensified independent federal injury.

## L. Injunction overlap

200. On January 20, 2026, Sarah Fox proceeded pro se on a harassment injunction request against Plaintiff and did not call additional witnesses. Tr. 1-20-26:2:9-18.

201. Sarah Fox told the court that OFW communications referenced Hollie White, Eric, health-insurance matters, school, medical, dental, counseling, and therapy updates. Tr. 1-20-26:7:7-9:10.

202. The injunction court stated that the communications concerned custody and placement and had a legitimate purpose regarding the children. Tr. 1-20-26:9:11-10:6.

203. The injunction court denied Sarah Fox's request, stating that the contact was due to the parties having children together and had a legitimate purpose. Tr. 1-20-26:10:16-11:8.

204. That proceeding confirms that at least one state-court record recognized a legitimate parental-access purpose for communications that other tracks treated as adverse or sanctionable.

16

205. On February 9, 2026, Hollie White appeared as petitioner in 26-CV-107, and the court identified Plaintiff's bond in 25-CF-1639 as the basis for the injunction. Tr. 2-9-26:1; 2:19-25.

206. White testified that she had filed approximately 17 police reports in the prior four years. Tr. 2-9-26:3:15-18.

207. White testified that she had been subpoenaed in Plaintiff's family-court case involving Sarah Fox and the minor children and had been brought into family court, civil court, small-claims court, and criminal court. Tr. 2-9-26:7:14-23.

208. Plaintiff testified that the children attended Pathways and PSG where White worked. Tr. 2-9-26:11:1-3.

209. Plaintiff testified that White and Sarah Fox were working with one another and connected that assertion to Sarah Fox's use of Pathways and PSG. Tr. 2-9-26:11:17-21.

210. The court granted a four-year harassment injunction. Tr. 2-9-26:16:6-12.

211. Plaintiff does not ask this Court to alter that injunction.

212. Plaintiff uses the injunction sequence to prove continuing restraint, cross-forum escalation, damages, and ongoing burden on protected parental-access efforts.

## M. Smathers, record ambiguity, and access injury

213. On December 2, 2025, Commissioner Smathers opened the postjudgment hearing by identifying which motions would and would not be heard.

214. Smathers stated that Plaintiff's October 22 contempt motion was denied without a hearing and would not be heard. Tr. 12-2-25:2:13-22.

215. Smathers stated that Plaintiff's November 12 placement-modification motion was denied a hearing because no substantial change had been alleged since the September 30, 2025 order. Tr. 12-2-25:3:1-6.

216. Smathers stated that Sarah Fox's contempt motion and tax-dependency motion would be heard. Tr. 12-2-25:3:7-18.

217. Plaintiff stated that there had been approximately three months of no contact. Tr. 12-2-25:4:4-6:25.

218. Plaintiff stated that placement had resumed only through Hope Council. Tr. 12-2-25:4:4-6:25.

219. Plaintiff stated that holiday dates had been denied. Tr. 12-2-25:4:4-6:25.

220. Plaintiff stated that he had filed motions not heard by Judge Iverson. Tr. 12-2-25:4:4-6:25.

221. Plaintiff stated that the supervised-placement and support-cost structure depleted his ability to have meaningful contact with the children. Tr. 12-2-25:4:4-6:25.

222. Smathers responded that she had "no ability to change Judge Iverson's orders" and could "only enforce them." Tr. 12-2-25:6:23-25.

223. Plaintiff again stated that the structure was creating distance, lost time, and irreparable harm. Tr. 12-2-25:8:8-24.

224. Smathers again stated, "I can't change the order. I can only enforce it." Tr. 12-2-25:8:20-24.

225. Smathers then took no further action on Plaintiff's motion to enforce physical placement. Tr. 12-2-25:9:1-3.

226. Plaintiff uses this sequence to prove procedural non-adjudication, unclear review path, and actual injury.

227. Plaintiff does not ask this Court to modify Judge Iverson's placement order or Commissioner Smathers's enforcement ruling.

228. Later docket entries and record-access decisions created ambiguity regarding who acted, what was decided, what basis was applied, and what review path existed.

229. Denial of access to court audio impaired Plaintiff's ability to verify the record, identify the responsible decision-maker, determine what was decided, and pursue meaningful review.

230. The January 29, 2026 docket/minutes reflected additional record ambiguity and continuing access injury.

231. The January 29 docket entry states that Sarah Fox's contempt motion alleged Plaintiff used OFW for non-child matters, sent checks through the mail, and attempted to communicate with the children about court matters.

232. The docket entry states that Plaintiff responded that the OFW messages involved the children, that OFW allowed him to indicate check payment, and that he used checks because he wanted documentation.

233. The docket entry states that the court found contempt on two issues but not the third.

234. The docket entry states that the court imposed a stayed 120-day jail term.

235. The docket entry states that the court ordered Plaintiff not to send any mail to Sarah Fox.

18

236. The docket entry states that the court ordered Plaintiff not to use OFW to discuss the case.

237. The docket entry states that the court required all court appearances for three years.

238. The docket entry states that Plaintiff's motion to modify placement resulted in adding Out & About as well as Hope Council after Plaintiff stated Hope Council had discontinued services.

239. The docket entry states that Plaintiff's January 2 motion to enforce variable costs resulted in no further action.

240. The docket entry identifies the proceeding as "UDAR (Unmonitored)."

241. Plaintiff uses this docket record for ambiguity, review impairment, and continuing access injury.

242. Plaintiff does not ask this Court to review the contempt result.

## VI. Defendant-Specific Conduct

### A. Heather Iverson

243. Iverson had notice of Plaintiff's protected activity through hearings, filings, provider-conflict objections, preservation-related issues, contempt proceedings, provider-record objections, White-related motions, and trial proceedings.

244. Iverson had record notice that PSG and Pathways were the children's treatment providers.

245. Iverson had record notice of the provider-conflict theory involving White, Pathways, PSG, and internal provider communications.

246. Iverson had record notice that Plaintiff sought preservation, litigation holds, provider-record safeguards, in-camera review, and protection against mischaracterizing preservation activity as prohibited White contact.

247. Plaintiff does not seek damages from Iverson for judicial rulings, orders, findings, hearing management, trial management, contempt decisions, provider decisions, or docket control performed in an adjudicative capacity.

248. Plaintiff seeks relief against Iverson only for nonjudicial conduct, if proven, and for prospective declaratory relief to address ongoing federal injury where legally permitted.

### B. Alexandra Smathers

249. Smathers had notice through postjudgment filings, hearings, OFW-related contempt proceedings, placement-enforcement proceedings, child-

19

support proceedings, and Plaintiff's statements concerning unaddressed motions, pending review, and lack of meaningful access.

250. Smathers' December 2 hearing showed the mismatch between Plaintiff's parental-access injury and the available enforcement-only path.

251. Plaintiff does not seek damages from Smathers for judicial rulings, orders, findings, hearing management, contempt decisions, enforcement decisions, or docket control performed in an adjudicative capacity.

252. Plaintiff seeks relief against Smathers only for nonjudicial conduct, if proven, and for prospective declaratory relief to address ongoing federal injury where legally permitted.

## C. Thomas W. Anderson Jr.

253. Anderson had notice of Plaintiff's protected activity through filings, hearings, OLR-related notice, provider-conflict objections, provider-record objections, preservation materials, and White-related trial practice.

254. Anderson filed the contempt motion placing Plaintiff's protected reporting and preservation activity at issue.

255. Anderson referenced OLR-related notice during the June 26 hearing.

256. Anderson acknowledged White-related contact in the contempt sequence.

257. Anderson caused subpoenas to issue to Pathways and PSG therapists seeking "all records and notes."

258. Anderson used White-related and provider-related testimony at trial after Plaintiff objected to White's adverse status and Pathways/PSG connection.

259. Anderson's conduct is actionable only to the extent discovery and trial evidence prove joint participation, state action, use of state authority, ratification, or conspiracy causing federal injury.

## D. Sarah Fox

260. Sarah Fox had notice of Plaintiff's protected activity through filings, OFW communications, provider-conflict objections, provider communications, trial testimony, contempt proceedings, White communications, and DSPS-related testimony.

261. Sarah Fox initiated or used provider channels central to the family-court process.

262. Sarah Fox communicated with White, met with White, asked White about the children, and became friends with White.

263. Sarah Fox testified that White showed her Plaintiff's DSPS complaint concerning White.

20

264. Sarah Fox testified that the children needed services through companies where White worked, including Pathways and PSG.

265. Sarah Fox used contempt, provider, trial, and injunction channels in ways that later burdened Plaintiff's protected activity and parental-access efforts.

266. Sarah Fox's conduct is actionable only to the extent discovery and trial evidence prove joint participation, state action, use of state authority, ratification, or conspiracy causing federal injury.

## E. Hollie White

267. White had notice of Plaintiff's DSPS-related activity, provider-employer communications, subpoena and trial participation, injunction proceedings, criminal proceedings, and communications with Sarah Fox and Anderson.

268. White worked in the Pathways/PSG provider ecosystem.

269. White communicated with Sarah Fox.

270. White showed Sarah Fox Plaintiff's DSPS complaint.

271. White communicated with Anderson before trial about a posted video.

272. White's employer/provider channel became part of the criminal-track no-contact structure.

273. White's conduct is actionable only to the extent discovery and trial evidence prove state action, joint participation, use of state authority, ratification, or conspiracy causing federal injury.

## F. Pathways Consulting

274. Pathways had notice of Plaintiff's preservation concerns through July 2025 email communications and later filed preservation materials.

275. Pathways responded that minor records are maintained for seven years past age eighteen.

276. Plaintiff clarified to Pathways that he was not requesting confidential records and was issuing a preservation notice only.

277. Pathways was later identified as a provider channel connected to the children's treatment, White's employment, trial testimony, and criminal-track employer-contact restrictions.

278. Pathways' conduct is actionable only to the extent discovery and trial evidence prove state action, joint participation, provider-record misuse, employee-linked conduct, use of state authority, ratification, or conspiracy causing federal injury.

## G. Professional Services Group

21

279. PSG had notice through provider involvement, preservation instructions, subpoena practice, trial testimony, and White-related provider-employment issues.

280. PSG was identified as a provider channel connected to the children's treatment, White's employment, trial testimony, and criminal-track employer-contact restrictions.

281. PSG's conduct is actionable only to the extent discovery and trial evidence prove state action, joint participation, provider-record misuse, employee-linked conduct, use of state authority, ratification, or conspiracy causing federal injury.

## VII. Claims for Relief
## Count I — First Amendment Retaliation
## 42 U.S.C. § 1983

282. Plaintiff realleges the preceding paragraphs.

283. Plaintiff engaged in protected First Amendment activity.

284. Plaintiff's protected activity included court filings, motions, preservation notices, provider-conflict objections, record-access requests, official misconduct complaints, OLR-related activity, Judicial Commission-related activity, HHS/OCR-related activity, DSPS-related reporting, appellate filings, writ-related filings, and requests for records relevant to parental-access litigation.

285. Defendants knew or had reason to know of Plaintiff's protected activity.

286. Adverse action followed Plaintiff's protected activity.

287. Adverse action included procedural non-adjudication, unclear review paths, record-access impairment, provider-conflict escalation, use of protected reporting or preservation activity against Plaintiff, White-related proceedings, criminal-track overlap, employment-related harm, financial impairment, and continuing injury to lawful parental-access efforts.

288. The adverse action would deter a person of ordinary firmness from continuing to petition, report misconduct, preserve evidence, request records, challenge provider conflicts, or pursue parental-access relief.

289. Causation is supported by timing, notice, docket sequence, provider-conflict escalation, White-related proceedings, Anderson-related conduct, provider subpoena practice, criminal-track overlap, and the sequence of protected activity followed by adverse consequences.

22

290. Plaintiff will prove that protected activity was repeatedly placed before court, litigation, provider, and criminal-track actors before adverse consequences followed.

291. Plaintiff seeks damages from nonimmune defendants for nonimmune conduct and prospective relief only where legally permitted.

## Count II — Denial of Meaningful Access to Courts
## First and Fourteenth Amendments, 42 U.S.C. § 1983

292. Plaintiff realleges the preceding paragraphs.

293. Plaintiff had nonfrivolous motions, objections, record-access requests, and review issues pending or available in Wisconsin proceedings.

294. Those matters concerned parental access, provider conflict, medical-record access, provider-record access, preservation, privacy, contempt defense, due process, and reviewability.

295. Defendants' nonimmune conduct hindered meaningful adjudication or review of those issues.

296. Plaintiff's injury is not that he lost a ruling.

297. Plaintiff's injury is that motions and objections were accepted, acknowledged, deferred, absorbed into later proceedings, routed elsewhere, or reflected through docket notation or transcript incorporation without a clear, reviewable disposition.

298. Plaintiff could not meaningfully identify what was decided, who decided it, what standard applied, what order controlled, or what review path existed.

299. Record-access decisions and denial of access to court audio impaired Plaintiff's ability to verify the record and pursue meaningful review.

300. Provider-record process impairment also denied meaningful access.

301. Plaintiff requested court-only production, in-camera review, sequestration, certification of receipt, no redisclosure, and protection from disclosure of privileged therapy materials.

302. Plaintiff suffered actual injury to parental-access litigation, provider-record litigation, contempt defense, review efforts, financial stability, and lawful parental-access efforts.

303. Plaintiff seeks damages from nonimmune defendants and prospective relief where legally permitted.

## Count III — Procedural Due Process

23

**Fourteenth Amendment, 42 U.S.C. § 1983**

304. Plaintiff realleges the preceding paragraphs.

305. Plaintiff has protected liberty interests in parental association, family integrity, and lawful parental-access efforts.

306. Plaintiff has protected procedural interests in meaningful notice, meaningful opportunity to be heard, record access, provider-record process, and reviewability when parental-access interests are burdened.

307. Defendants' nonimmune conduct contributed to a process in which critical motions, objections, provider-record issues, preservation issues, and parental-access issues were routed, deferred, restricted, or used without a clear, reviewable procedure.

308. Plaintiff was deprived of adequate notice of what was decided, who decided it, what basis was applied, and what review path existed.

309. Plaintiff tried to separate lawful preservation activity from prohibited White contact by filing R.148, R.149, and R.150.

310. Plaintiff later requested in-camera review, sealing, counsel certification, no redisclosure, exclusion of psychotherapy process notes, and court-only production through R.173 and R.174.

311. The later failure to provide a clear path for provider-preservation, record-access, injunction-boundary, and parental-access issues impaired meaningful process.

312. Plaintiff suffered injury including loss of meaningful parental-access litigation, inability to pursue meaningful review, litigation impairment, financial harm, and continuing parental-access impairment.

---

## Count IV — Familial Association and Parental-Access Impairment
### Fourteenth Amendment, *42 U.S.C. § 1983*

313. Plaintiff realleges the preceding paragraphs.

314. Plaintiff has a fundamental liberty interest in the care, custody, companionship, and management of his children.

315. Plaintiff does not ask this Court to determine custody, placement, support, or the children's best interests.

316. Plaintiff claims that Defendants' independent nonimmune conduct impaired his ability to seek, fund, restore, and exercise lawful parental access through meaningful process.

317. Plaintiff's lawful parental-access efforts were burdened by retaliation, record-access impairment, provider-conflict escalation, provider-gatekeeping,

24

use of protected reporting activity, White-related proceedings, criminal-track overlap, employment-related harm, and financial impairment.

318. These injuries were independent of the correctness of any Wisconsin custody or placement determination.

319. Plaintiff seeks damages and prospective federal relief only for independent constitutional injury, not a federal placement order.

## Count V — State-Linked Private Conduct, Joint Action, and Conspiracy
### *42 U.S.C. § 1983*

320. Plaintiff realleges the preceding paragraphs.

321. Private actors may be liable under § 1983 when their conduct is fairly attributable to the State through state action, joint participation, conspiracy, ratification, or use of state authority to cause constitutional injury.

322. Anderson, White, Sarah Fox, Pathways, and PSG are private actors or private entities.

323. Plaintiff does not claim that these defendants are liable merely because they were adverse to Plaintiff, participated in litigation, made allegations, filed motions, represented a party, testified, provided therapy, maintained records, or received communications.

324. Plaintiff claims that discovery and trial evidence will prove state-linked private conduct through the cumulative sequence of provider-conflict notice, White/provider involvement, protected reporting, provider-record subpoenas, contempt proceedings, criminal-track employer restrictions, injunction proceedings, and continuing parental-access impairment.

325. Anderson's state-linked conduct includes use of contempt proceedings, White-related information, provider subpoenas, provider testimony, and court enforcement machinery after notice of Plaintiff's protected activity and provider-conflict objections.

326. Sarah Fox's state-linked conduct includes use of provider channels, White communications, contempt proceedings, injunction proceedings, and White/provider material after notice of Plaintiff's protected activity and provider-conflict objections.

327. White's state-linked conduct includes use of provider-employer channels, communications with Sarah Fox and Anderson, criminal-track involvement, injunction proceedings, and White-related employer restrictions after Plaintiff's protected reporting and preservation activity.

25

328. Pathways' and PSG's state-linked conduct includes provider-record, employer, employee-linked, preservation, subpoena, and criminal-track consequences to the extent discovery proves those entities joined, ratified, enabled, or participated in state-linked conduct causing federal injury.

329. Plaintiff does not claim that provider employment, witness testimony, preservation correspondence, or ordinary litigation participation alone creates § 1983 liability.

330. Plaintiff claims that the combined evidence supports a plausible inference for discovery and proof at trial.

331. The state-linked conduct caused retaliation, denial of meaningful access to courts, procedural due-process deprivation, employment-related harm, financial impairment, reputational harm, and parental-access impairment.

## VIII. Damages

332. Plaintiff seeks compensatory damages against nonimmune defendants for nonimmune conduct.

333. Plaintiff's damages include lost wages, lost employment benefits, and other employment-related losses.

334. Plaintiff's damages include reputational harm and publication-related harm.

335. Plaintiff's damages include litigation impairment, record-access injury, loss of meaningful review, increased litigation costs, and increased court-access burdens.

336. Plaintiff's damages include parental-access impairment and continuing injury to his ability to seek, fund, restore, and exercise lawful parental access.

337. Plaintiff's damages include increased supervised-placement costs, transportation costs, child-support-related burdens, GAL-related costs, provider-related costs, transcript costs, court costs, and related expenses caused or worsened by the constitutional injuries.

338. Plaintiff seeks nominal damages for constitutional violations.

339. Plaintiff seeks punitive damages against individual defendants only where legally permitted and where the evidence proves malicious, reckless, or callous disregard of federally protected rights.

340. Plaintiff does not seek damages against immune defendants for protected judicial acts.

## IX. Declaratory Relief

26

341. Plaintiff seeks a declaration that Defendants' nonimmune conduct violated his First and Fourteenth Amendment rights.

342. Plaintiff seeks a declaration that the federal injuries in this Complaint are independent of the correctness of any Wisconsin custody, placement, contempt, injunction, subpoena, evidentiary, provider, criminal, employment, publication, or family-court ruling.

343. Plaintiff seeks a declaration that retaliation for protected petitioning, preservation, record-access, and official reporting activity violates the First Amendment.

344. Plaintiff seeks a declaration that unclear or non-reviewable handling of motions affecting protected parental-access interests can deny meaningful access to adjudication and review.

345. Plaintiff seeks a declaration that state-linked private conduct may violate federal rights when tied to state action, joint participation, conspiracy, ratification, retaliation, or use of state authority causing constitutional injury.

## X. Prospective Relief

346. Plaintiff seeks prospective relief only to prevent ongoing federal constitutional injury.

347. Plaintiff does not seek an order requiring any Wisconsin state court to grant or deny any motion.

348. Plaintiff does not seek an order changing custody, placement, child support, contempt, injunction, subpoena, evidentiary, provider, criminal, employment, publication, or family-court rulings.

349. Plaintiff does not seek federal supervision of Wisconsin domestic-relations merits.

350. Plaintiff does not seek federal interference with any pending criminal prosecution, criminal bond condition, injunction proceeding, contempt proceeding, or family-court merits issue.

351. Any prospective relief against a judicial officer must comply with 42 U.S.C. § 1983.

352. Plaintiff seeks only narrow prospective relief necessary to remedy ongoing federal constitutional injury and preserve meaningful access to adjudication and review.

27

## XI. Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Enter judgment in Plaintiff's favor on all legally supported claims;

B. Award compensatory damages against nonimmune defendants for nonimmune conduct;

C. Award nominal damages for constitutional violations;

D. Award punitive damages where legally permitted;

E. Enter declaratory relief consistent with this Complaint;

F. Enter narrow prospective relief only where permitted by law;

G. Award costs and any other recoverable relief to the extent permitted by law;

H. Grant such other relief as the Court deems just and lawful.

## XII. Jury Demand

353.    Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

Dated this 29th Day of April, 2026

**Mathiew Rae Fox**
Pro Se Petitioner
2726 83rd St.
Kenosha, WI 53143
(262) 203-3109
Mathiew.fox@gmail.com