# United States District Court
# Eastern District of Wisconsin

*Case No. 2:26-cv-00797-BHL*

MATHIEW RAE FOX,
Plaintiff,

v.

ALEXANDRA K. SMATHERS, et al.,
Defendants.

U.S. District Court
Wisconsin Eastern
SEP 22 2026
FILED
Clerk of Court

**PLAINTIFF'S MOTION UNDER FED. R. CIV. P. 60(b)(6) AND 62.1 FOR AN INDICATIVE RULING; FOR LEAVE, UPON REMAND, TO FILE A FIRST AMENDED AND SUPPLEMENTAL COMPLAINT UNDER RULES 15(a)(2) AND 15(d); AND MEMORANDUM IN SUPPORT**

Plaintiff Mathiew Rae Fox, proceeding pro se, moves under Rules 60(b)(6) and 62.1 for an indicative ruling that this motion raises a substantial issue and that, if the Seventh Circuit remands for that purpose, this Court would vacate the judgment to the limited extent necessary to permit filing of the attached Proposed First Amended and Supplemental Complaint. Plaintiff does not ask this Court to reverse, alter, supervise, or declare invalid any Wisconsin custody, contempt, harassment-injunction, criminal, restitution, or postconviction judgment.

The requested relief is based principally on material events that did not exist when judgment entered on July 15, 2026: the August 20 trial-level criminal disposition; the prosecutor's contemporaneous plea-negotiation email expressly identifying an anticipated licensing-board complaint from the complaining witness as a consideration in rejecting a narrower disposition; and the September PSG records sequence, in which PSG initially stated that it could begin assembling the requested records and then issued a formal denial invoking 45 C.F.R. § 164.502(g)(5) and requiring an explicit certified circuit-court order. The earlier family-court filings and police materials are used only to establish continuity and context. They are not offered as newly discovered evidence under Rule 60(b)(2).

## I. RELIEF REQUESTED AND PROCEDURAL POSTURE

1. On July 15, 2026, the Court dismissed the complaint without prejudice and without leave to amend. ECF No. 60 at 2, 5-7. It held that Rooker-Feldman, Younger abstention, the domestic-relations doctrine, judicial immunity, state-action deficiencies, and possible claim splitting defeated the pleaded claims, and it found amendment futile. Id. at 5-7.

2. The same order directed Plaintiff to show cause under Rule 11 because the Court stated that the circumstances suggested Plaintiff "may be trying to use this Court's authority to exact revenge" against participants in prior proceedings. ECF No. 60 at 8. Plaintiff responded at ECF No. 62 and appealed. Appeal No. 26-2694 remains pending.

3. Because the appeal is pending, Rule 62.1 authorizes this Court to deny the motion, defer it, or state that it would grant relief on remand or that the motion raises a substantial issue. Fed. R. Civ. P. 62.1(a); Fed. R. App. P. 12.1. The Seventh Circuit has recently confirmed that Rule 62.1 remains available in this posture. Agee v. Hickenbottom, Nos. 25-1737 & 25-2180, slip op. at 6-8 (7th Cir. July 17, 2026).

4. Plaintiff attaches one complete Proposed First Amended and Supplemental Complaint rather than a separate supplemental pleading. That pleading restates the case in full, narrows claims identified as defective in ECF No. 60, and adds later events under Rule 15(d). This structure complies with Civil L.R. 15 and avoids forcing the Court to assemble an operative complaint from multiple documents.

## II. RULE 60(b)(6) IS THE GATE; RULE 15 FOLLOWS

BLOM Bank SAL v. Honickman controls the order of operations. A party seeking Rule 60(b)(6) relief must first establish extraordinary circumstances; the standard does not become less demanding merely because the requested next step is amendment under Rule 15. 605 U.S. 204, 212-16 (2025). The Seventh Circuit likewise does not permit Rule 60 to become a vehicle for arguments or evidence that could have been presented before judgment. Word Seed Church v. Village of Homewood, 43 F.4th 688, 690-93 (7th Cir. 2022).

This motion therefore does not treat the March 2026 injunction transcript, 2025 police reports, April 2026 records motion, June authorizations, or July proposed records procedure as new evidence. Those materials predate judgment. Their role is narrower: they show that the postjudgment events concern the same protected reporting, provider-record, preservation, and

criminal-process subjects already placed before the Court in Dkt. 1. The Rule 60(b)(6) showing rests on what happened after July 15.

The posture also differs materially from BLOM Bank. There, the plaintiffs had declined earlier opportunities to amend. 605 U.S. at 206-08, 215-16. Here, ECF No. 60 dismissed the first complaint and denied leave in the same order because the Court found amendment categorically futile. Plaintiff did not decline a prior opportunity to cure. That difference is not itself extraordinary, but it matters when postjudgment facts directly bear on the premises supporting futility, abstention, and the Rule 11 purpose inference.

## III. THE POSTJUDGMENT EVENTS WARRANT AN INDICATIVE RULING

### A. The August 20 disposition and prosecutor email changed the criminal-process posture and materially bear on ECF No. 60's purpose inference.

ECF No. 60 applied Younger because an "ongoing criminal prosecution" charged Plaintiff with, among other things, stalking White. ECF No. 60 at 1, 6. The same ongoing prosecution was then cited in support of the Court's concern that Plaintiff might be using federal litigation to exact revenge. Id. at 8. Those propositions were consequential: one supported abstention and the other generated a Rule 11 show-cause order.

On August 20, 2026, the criminal case changed posture at the trial-court level. The public disposition reflects a guilty plea to an amended misdemeanor disorderly-conduct count; Counts 2 through 5 were dismissed and read in; $4,250 in restitution was stipulated; a $500 fine plus costs was imposed; and Plaintiff later filed a notice of intent to pursue postconviction relief. Ex. B. Plaintiff does not characterize this as favorable termination and does not ask this Court to invalidate the conviction.

The contemporaneous plea correspondence adds a different kind of fact. Defense counsel proposed resolving the case with one amended disorderly-conduct count and no read-ins. The prosecutor responded: "No, we have to dismiss and read in everything, especially if Count 1 is amended to a DC. I would get a complaint to the board from the victim if we give the case away." Ex. A at 4.[1]

[1] Plaintiff accuses Defendants of punishing his DSPS complaint as a crime and then honoring White's threatened DSPS complaint as leverage. Plaintiff petitioned DSPS concerning White's professional conduct. That petition was treated in the state proceedings as harassment and was routed into criminal enforcement. On August 20, 2026, the prosecutor refused a single amended disorderly-conduct count without read-ins because, in his words, "I would get a complaint to the board from the victim if we give the case away." The same licensing-board channel was therefore criminalized when Plaintiff used it and treated as a veto when White threatened to

That sentence is not Plaintiff's characterization of motive. It is a contemporaneous government communication. Standing alone, it does not establish that White previously threatened the prosecutor, that White and the State entered an agreement, or that the prosecution lacked a lawful basis. What it does establish is that the prosecutor expressly identified an anticipated licensing-board complaint from the complaining witness as a consideration when rejecting the proposed narrower disposition. The Court did not have that fact when it inferred that Plaintiff's federal filing itself may have been retaliatory or vengeful.

The distinction matters under Rule 60(b)(6). This is not merely cumulative support for an old argument. The August 20 disposition and email did not exist on July 15 and could not have been produced earlier through diligence. They arose within weeks of a judgment that treated the prosecution as ongoing and simultaneously used that prosecution as part of an improper-purpose inference. They therefore warrant reassessment through a concrete amended pleading rather than through the categorical futility determination made on the pre-August record.

**B. The postjudgment PSG correspondence converted a pending records dispute into a developed, documented denial.**

The provider-record dispute was already part of the original case. Dkt. 1 pleaded preservation notices, provider-conflict objections, records requests, and efforts to separate lawful preservation activity from prohibited personal contact. See, e.g., Dkt. 1 ¶¶109-125, 127-134, 139-150, 253-280. The family-court chronology also shows that Plaintiff sought a court-directed release mechanism on April 20, 2026; that Commissioner Smathers declined the proposed relief on April 21 because the request did not state a legal basis for which relief could be granted; that Plaintiff later supplied provider-specific authorizations and identified legal authorities on June 24; and that he proposed a neutral records-processing mechanism on July 1. Exs. C, D, H. Those pre-judgment materials are chronology, not Rule 60(b)(2) evidence.

After judgment, the dispute matured. On August 10, the circuit court electronically declined Plaintiff's proposed order seeking a prompt ruling on the pending records requests. Ex. E. On September 2, PSG Vice President of Clinical Operations Leah Featherstone wrote that she had

---

use it. Plaintiff's accusation is that this is not evenhanded enforcement. It is viewpoint- and speaker-dependent use of a petitioning channel: his DSPS complaint became evidence against him; her anticipated DSPS complaint became a reason to keep dismissed counts in the criminal judgment through read-ins. The email is the State's contemporaneous admission of the second half of that arrangement. Plaintiff does not ask this Court to vacate the conviction or to discipline the prosecutor on this motion. He asks leave to plead that the State and White used the DSPS complaint process as a weapon against protected petitioning when he employed it and as a bargaining chip when she did.

received the request through counsel, asked Plaintiff to identify the records sought, and stated that once he did so she could "start getting them together." Ex. F. On September 3, Plaintiff supplied dates of birth and a detailed request beginning with the initial referral and intake and continuing through the then-current record, while emphasizing the initial intake and referral materials. Id.

PSG then issued a written denial dated September 3 and transmitted September 8. The letter denied access to Michael's mental-health treatment records; invoked 45 C.F.R. § 164.502(g)(5) and Wisconsin privacy protections; referred generally to danger, safety, and modified custody or placement rights; and stated that PSG would not release the specific treatment files without an explicit, certified Wisconsin circuit-court order directing release. Ex. G. Featherstone separately stated that PSG had no records for Eden. Ex. F.

The significance is not that a provider denial is automatically unlawful. It is that the postjudgment correspondence supplies an objective, developed position that did not exist at judgment and completes the procedural loop Plaintiff had been attempting to resolve: he sought a court-directed release mechanism, identified authority, narrowed the request, proposed protective alternatives, and later received a provider denial requiring the very kind of explicit court order he had been attempting to obtain. The proposed amended pleading now separates that records claim from any request to overturn family-court rulings and pleads the Wisconsin records statute directly against PSG.

**C. The older police and injunction materials corroborate continuity; they are not independent Rule 60 grounds.**

The March 4, 2026 injunction transcript and police materials predate judgment. They are included only because they show that the disputed communications were contemporaneously tied to provider preservation, Pathways/PSG, licensing complaints, and family-court litigation. Dkt. 1 already pleaded that the children received services through Pathways and PSG, that White worked in that provider ecosystem, that White and Sarah Fox communicated about Plaintiff's DSPS complaint, that Anderson acknowledged White as a source of information used in contempt litigation, and that provider-directed emails were evaluated in the criminal track. Dkt. 1 ¶¶127-134, 163-176, 188-198, 253-280.[2]

[2] In Appeal No. 2025AP2229, the circuit court found that my reporting of alleged misconduct constituted contemptuous conduct. The court separately found no contempt arising from the incident involving my children's school, yet nevertheless imposed restrictions affecting my ability to see my children. I was also ordered to incur and

The police/injunction materials do not prove a constitutional violation by themselves. Their function is to demonstrate continuity: the August prosecutor email and September provider denial concern the same reporting, provider, preservation, and enforcement subjects that existed before judgment. The proposed pleading therefore does not manufacture a new lawsuit from later evidence; it narrows and supplements theories already present in Dkt. 1.

## IV. THE PROPOSED PLEADING CURES, RATHER THAN EVADE, THE DEFECTS IDENTIFIED IN ECF NO. 60

### A. Rooker-Feldman and the domestic-relations doctrine.

The proposed complaint does not invoke a fraud or corruption exception to Rooker-Feldman. See Hadzi-Tanovic v. Johnson, 62 F.4th 394, 406-08 (7th Cir. 2023). It accepts that this Court may not review and reject Wisconsin judgments and does not rely on the pendency of state appellate review after T.M. v. University of Maryland Medical System Corp., 608 U.S. ___, 146 S. Ct. 1739, 1743-44, 1749-51 (2026).

Instead, the proposed federal claim is limited to asserted injuries that do not require invalidation of a custody, contempt, injunction, or criminal judgment. That is the distinction required by Seventh Circuit law: Rooker-Feldman turns on whether the state judgment caused the federal injury. See Gilbank v. Wood County Department of Human Services, 111 F.4th 754, 766-67 (7th Cir. 2024) (en banc). The amended pleading expressly disclaims federal alteration of custody, placement, contempt, injunction, restitution, or conviction. Family-court rulings remain chronology, not the requested remedy.

### B. Younger and Heck.

The August 20 plea does not erase all abstention concerns because state postconviction proceedings remain pending. Plaintiff therefore does not argue that Younger has categorically vanished. Nor does he plead a federal malicious-prosecution count while the conviction remains outstanding. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Thompson v. Clark, 596 U.S. 36, 39, 49 (2022). The criminal sequence is pleaded for retaliation, motive, context, causation, and damages only to the extent adjudication does not necessarily imply the conviction's invalidity.

---

pay attorney fees associated with those proceedings. During the litigation, Attorney Anderson acknowledged that Hollie White was the person who reported the underlying matter to him. The case remains pending and is being prepared for filing with the United States Supreme Court as a Petition for a Write of Certiorari. (Unnecessary litigation cause be Judge Iverson).

If Younger applies to a separable damages component, the ordinary disposition is a stay where damages cannot be recovered in the state proceeding. See Gakuba v. O'Brien, 711 F.3d 751, 753 (7th Cir. 2013). The proposed complaint expressly requests that result rather than federal interference with ongoing postconviction proceedings.

**C. State action and judicial immunity.**

The proposed complaint no longer treats adverse judicial rulings as actionable damages conduct and does not ask this Court to infer a conspiracy merely because private parties prevailed in state proceedings. It states the documented private-party connections affirmatively: Anderson acknowledged receiving information from White before contempt litigation; Sarah Fox testified to direct communications and a relationship with White and to receiving Plaintiff's DSPS complaint from White; White testified to continuing communications with Sarah and to her Pathways/PSG employment; and later government correspondence expressly identified anticipated complaint-channel pressure from the complaining witness. Dkt. 1 ¶¶127-134, 163-176; Ex. A.

Those facts do not automatically resolve the state-action question. The proposed pleading uses them to support a defendant-specific joint-action inference, not a free-standing conspiracy label. That is the proper inquiry under Dennis v. Sparks, 449 U.S. 24, 27-28 (1980), and Seventh Circuit precedent requiring more than bare allegations of joint action. See Scott v. University of Chicago Medical Center, 107 F.4th 752, 758 (7th Cir. 2024).

**D. The records claim now includes a direct Wisconsin cause of action rather than forcing every provider dispute into § 1983.**

Wisconsin law expressly provides that, except under the statutory exception or unless otherwise ordered, access to a child's medical, dental, and school records is available to a parent regardless of legal custody. Wis. Stat. § 767.41(7)(a). Section 51.30(5)(b) provides parents of minors the same treatment-record access rights as subject individuals, while § 51.30(5)(bm) removes those parental rights where the parent has been denied periods of physical placement under the specified statutes. Section 51.30(9) expressly authorizes a civil action for violations and permits damages and injunctive relief.

The amended pleading does not ask this Court to assume that PSG's denial violated those statutes. PSG has identified § 164.502(g)(5) and safety concerns, and privileges or other lawful exceptions may apply. The proposed state-law count instead identifies the concrete statutory

dispute: whether PSG lawfully denied all requested non-exempt records to a parent who maintains court-ordered physical placement, after first indicating it could assemble the records, and whether the statutory exceptions on which PSG relies actually apply to the requested categories. Unlike a § 1983 theory against a private provider, that Wisconsin claim does not depend on proving PSG was a state actor.

**E. Claim splitting and Rule 11.**

The proposed complaint disclaims double recovery and does not repackage the same judgment-based claims merely to avoid Case No. 26-cv-772. Its supplemental core consists of events that occurred after the April 30 filing of 772 and, in several instances, after judgment in this case. To the extent an earlier claim is duplicative of 772, Plaintiff does not seek parallel adjudication of the same cause of action.

The postjudgment prosecutor email also materially changes the Rule 11 context. ECF No. 60 inferred possible revenge from the then-ongoing criminal case. The later email does not prove Plaintiff was right about every pleaded theory. But it independently confirms that complaint-channel pressure from the complaining witness entered the State's resolution calculus. That is precisely why an indicative ruling and a narrower pleading are appropriate. Plaintiff seeks no Rule 11 sanctions, criminal findings, or declaration that any defendant committed corruption or conspiracy on the present motion record.

## V. CIVIL L.R. 15 STATEMENT OF SPECIFIC CHANGES

The attached Proposed First Amended and Supplemental Complaint makes the following specific changes:

- restates the entire pleading in one document and labels post-May 5 events as supplemental allegations under Rule 15(d);
- narrows the principal federal claim to First Amendment retaliation and identifies the documented protected activity, adverse processes, chronology, and defendant-specific facts relied upon;
- removes conspiracy as a stand-alone count and uses joint action only as a state-action theory where supported by specific facts;
- does not seek damages for judicial acts and does not request federal alteration of any Wisconsin judgment;

- does not presently plead federal malicious prosecution while the conviction remains outstanding, while expressly stating that this procedural limitation is not an admission that surrounding conduct was lawful;
- adds the August 20 disposition and prosecutor correspondence, the August 10 family-court records event, and the September PSG correspondence as Rule 15(d) supplemental facts;
- adds a Wisconsin statutory records-access count under Wis. Stat. § 51.30(9) against PSG, subject to any valid statutory, privilege, or federal-law defense;
- preserves damages only for independent injuries caused by actionable conduct, not simply for the existence of adverse state judgments; and
- expressly requests a stay, rather than dismissal, of any separable damages component for which Younger requires abstention while state proceedings remain pending.

## VI. RELIEF

Plaintiff respectfully requests an order under Rule 62.1(a)(3) stating that this motion raises a substantial issue and that, if the Seventh Circuit remands for that purpose, the Court would grant Rule 60(b)(6) relief to the limited extent necessary to vacate the judgment, permit filing of the attached First Amended and Supplemental Complaint, and adjudicate that pleading under the ordinary Rules. Plaintiff requests no present adjudication of the merits of any state judgment and no finding that any person committed a crime, corruption, conspiracy, or professional misconduct.

Dated this 21st. day of September, 2026,

Respectfully submitted,

Mathiew Rae Fox,
Plaintiff Pro Se
2726 83rd St.
Kenosha, WI 53143
(262) 203-3109
Mathiew.fox@gmail.com