# United States District Court
# Eastern District of Wisconsin

*Case No. 2:26-cv-00797-BHL*

MATHIEW RAE FOX,
Plaintiff,

v.

ALEXANDRA K. SMATHERS, et al.,
Defendants.

U.S. District Court
Wisconsin Eastern
SEP 22 2026
FILED
Clerk of Court

**PROPOSED FIRST AMENDED AND SUPPLEMENTAL COMPLAINT 42 U.S.C. § 1983; WIS. STAT. § 51.30(9); RULE 15(d) SUPPLEMENTAL ALLEGATIONS; JURY DEMAND**

## I. NATURE OF THE ACTION AND LIMITS OF RELIEF

1. This action concerns First Amendment retaliation and a separate statutory records-access dispute. It does not ask this Court to sit as an appellate court over Wisconsin family, injunction, or criminal judgments.

2. Plaintiff does not ask this Court to reverse, vacate, modify, supervise, or declare invalid any Wisconsin custody, placement, contempt, harassment-injunction, conviction, restitution, or postconviction judgment.

3. The amended pleading does not rest principally on events awaiting discovery. The material chronology is documented in transcripts, docket entries, police records, provider correspondence, filed motions, and contemporaneous government communications. Where a document establishes an event, Plaintiff states the event as a fact. Where motive, agreement, retaliation, or legal responsibility must be inferred, Plaintiff identifies the inference rather than presenting it as an adjudicated finding.

4. Plaintiff does not invoke any fraud or corruption exception to Rooker-Feldman. The federal claim is limited to asserted injuries that can exist without rejection of a state judgment.

5. Plaintiff does not presently assert a federal malicious-prosecution claim arising from Kenosha County Case No. 2025CF001639 because the August 20, 2026 judgment of conviction remains outstanding and postconviction proceedings are pending. That procedural limitation is not an admission that the prosecution, reporting, investigation, plea leverage, or surrounding conduct was lawful, nonretaliatory, or supported by proper motives.

6. Plaintiff does not plead a stand-alone § 1983 conspiracy count. Joint action is pleaded only as a state-action theory against a private defendant where the documented facts support an inference of concerted participation with a state actor in an alleged constitutional deprivation.

7. Plaintiff does not assert a stand-alone HIPAA damages claim. Federal privacy regulations and Wisconsin records law are pleaded only for the legal framework governing the separate records dispute.

8. Plaintiff does not seek damages against judicial officers for judicial acts. Smathers and Iverson remain identified only to preserve the factual and procedural chronology and any nonjudicial or prospective theory that is legally cognizable; adverse rulings alone are not pleaded as constitutional torts.

## II. JURISDICTION AND VENUE

9. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the First Amendment claim brought under 42 U.S.C. § 1983.

10. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Wisconsin records-access claim arising from the same provider, preservation, and litigation chronology.

11. Venue is proper in the Eastern District of Wisconsin because the material events occurred principally in Kenosha County, Wisconsin.

12. The allegations concerning events after May 5, 2026 are supplemental allegations under Fed. R. Civ. P. 15(d). This document restates the full proposed pleading rather than incorporating Dkt. 1 by reference.

## III. PARTIES

13. Plaintiff Mathiew Rae Fox is a Wisconsin resident and father of two minor children.

14. Defendant Thomas W. Anderson Jr. is a private attorney who represented Sarah Fox in family-court litigation. Ordinary representation and use of court procedures do not by themselves constitute state action.

15. Defendant Hollie White is a private individual who participated in family-court, injunction, provider-related, police, and criminal events described

below. Reporting alleged misconduct or testifying, standing alone, does not constitute state action.

16. Defendant Sarah Fox is Plaintiff's former spouse and a private actor. Use of family-court procedures, standing alone, does not constitute state action.

17. Defendant Pathways Consulting is a private provider organization that employed or was professionally affiliated with White during parts of the relevant period and maintained records concerning one of the children.

18. Defendant Professional Services Group (PSG) is a private provider organization that employed or was professionally affiliated with White during parts of the relevant period and maintained records concerning Michael.

19. Defendant Alexandra K. Smathers is a Kenosha County court commissioner. Plaintiff does not seek damages from Smathers for judicial acts.

20. Defendant Heather Iverson is a Wisconsin circuit judge. Plaintiff does not seek damages from Iverson for judicial acts.

## IV. PRE-MAY 5 DOCUMENTED CHRONOLOGY

21. Before this federal action was filed, Plaintiff repeatedly petitioned courts and governmental oversight bodies, including OLR, DSPS, the Wisconsin Judicial Commission, child-protection channels, and records/privacy channels, and pursued appeals, writ-related filings, provider-conflict objections, preservation notices, and medical-record requests. Dkt. 1 ¶¶7, 67, 282-291.

22. The original complaint documented that Anderson knew of Plaintiff's OLR-related activity, provider objections, preservation activity, and White-related issues. Dkt. 1 ¶¶102-106, 253-259.

23. At the August 13, 2025 family-court hearing, Anderson stated that a third party supplied information leading him to conclude that contempt should be pursued; the court identified "White" as the person Anderson had spoken with, and Anderson confirmed the identification. Dkt. 1 ¶¶127-134.

24. At the September 29, 2025 trial, Sarah Fox testified that she contacted White, met with her, became friends with her, and was shown Plaintiff's DSPS complaint concerning White. Dkt. 1 ¶¶163-169.

25. The same trial record identified White's employment or professional affiliation with Pathways and PSG. White testified that she and Sarah communicated after the DSPS matter, and White testified to knowledge regarding provider treatment through her employment communications. Dkt. 1 ¶¶170-176.

26. Plaintiff had already sent preservation communications to Pathways and PSG in July 2025. Those communications were directed to the organizations and distinguished preservation from a request for confidential treatment records. Dkt. 1 ¶¶109-125.

27. Police and criminal materials later treated provider-directed communications and White's reaction to them as part of an enforcement track. The original complaint pleaded officer testimony that the emails were sent to Pathways or the other counseling service rather than directly to White, that nothing threatening was identified in the criminal complaint, and that the intimidation theory depended in part on White's description or feelings about the communications. Dkt. 1 ¶¶192-198.

28. At the February 2026 injunction proceeding, White testified that she had filed approximately seventeen police reports over the preceding four years and discussed Plaintiff's reporting to the professional licensing board as harassment or intimidation. The children's use of Pathways/PSG and White's provider employment were also raised. Dkt. 1 ¶¶205-210; Ex. I.

29. These facts do not make every private participant a state actor. They establish, however, that Plaintiff's protected reporting, White's provider position, Sarah-White communications, Anderson-White communications, provider preservation, and state enforcement were already interrelated subjects before this case was filed.

## V. RECORDS-ACCESS CHRONOLOGY

30. On April 20, 2026, Plaintiff filed a motion in Kenosha County Case No. 2021FA000047 seeking an order compelling authorizations for Pathways and PSG records or, alternatively, authorizing the providers to release records directly. He also submitted a proposed order. Ex. H (Docs. 483-484).

31. On April 21, 2026, Commissioner Smathers electronically declined the requested relief on the stated ground that the request "does not state a legal basis for which his request can be granted." Ex. H (Doc. 485). Plaintiff does not plead that judicial disposition as an actionable constitutional act.

32. Plaintiff then attempted to cure the stated deficiency. On June 24, 2026, he filed provider-specific authorizations and identified Wis. Stat. §§ 767.41(7)(a) and 51.30, Wis. Admin. Code DHS 92.05 and 92.06, and 45 C.F.R. § 164.502(g)(3). Ex. C.

33. The June submission narrowed the requested material to categories including intake, referral, enrollment, assessment, administrative handling, billing, authorization, scheduling, attendance, provider assignment, records access, preservation, disclosure, and related communications. It expressly

stated that separately maintained psychotherapy process notes were not sought as a stand-alone category. Ex. C.

34. Plaintiff requested narrowing, protective conditions, in-camera review, or staged production instead of wholesale denial. Ex. C.

35. On July 1, Plaintiff submitted a proposed neutral records-processing order under which a records custodian, compliance employee, administrative office, or counsel could process the request without contact with White and without violating any no-contact restriction. Ex. D. The proposal was not entered, and Plaintiff does not represent otherwise.

36. On August 10, after the federal judgment, Judge Gerad Dougvillo electronically declined Plaintiff's proposed order seeking a prompt ruling on the pending records requests. Ex. E. Plaintiff pleads that event as chronology, not as an actionable constitutional act.

37. On September 2, PSG Vice President of Clinical Operations Leah Featherstone wrote that she had received the request through Reinhart Law, asked Plaintiff to identify the records sought, and stated that after clarification she could "start getting them together." Ex. F.

38. On September 3, Plaintiff supplied the children's identifying information and a detailed request for PSG records from initial referral/intake forward, specifically emphasizing initial intake and referral materials. Ex. F.

39. PSG issued a denial letter dated September 3 and transmitted it September 8. The letter denied access to Michael's mental-health treatment records, invoked 45 C.F.R. § 164.502(g)(5) and Wisconsin privacy protections, referred generally to danger or safety and modified custody or placement rights, and required an explicit certified Wisconsin circuit-court order directing release of the specific files. Exs. F-G.

40. Featherstone also stated that PSG did not have records for Eden. Ex. F.

41. The resulting records barrier was not created by a failure to ask, identify the providers, narrow the scope, supply authorizations, identify asserted legal authority, or propose protective mechanisms. The documentary sequence shows each of those steps.

42. Wisconsin law provides that, except under the statutory exception or unless otherwise ordered by a court, a parent has access to a child's medical, dental, and school records regardless of legal custody. Wis. Stat. § 767.41(7)(a).

43. Wisconsin law also provides that a parent of a minor generally has the same access rights as the subject individual to treatment records, while a parent denied periods of physical placement under the specified statutes may lose those parental access rights. Wis. Stat. § 51.30(5)(b), (bm).

44. Plaintiff maintains that the operative family-court order grants him supervised physical placement and that he has not been denied periods of physical placement under Wis. Stat. §§ 767.41(4)(b) or 767.451(4). PSG's September denial did not identify a particular order that expressly prohibited access to Michael's records.

45. Plaintiff recognizes that privileges, federal personal-representative rules, professional-judgment safety provisions, and other lawful exceptions may restrict particular material. His request for relief is limited to records and remedies to which he is legally entitled after application of those defenses to the actual requested categories.

## VI. SUPPLEMENTAL CRIMINAL-PROCESS FACTS ARISING AFTER JUDGMENT

46. When Plaintiff filed this action on May 5, 2026, Kenosha County Case No. 2025CF001639 was pending. ECF No. 60 relied on that ongoing prosecution in its Younger analysis and again when expressing concern that Plaintiff might have filed this federal case for revenge. ECF No. 60 at 6, 8.

47. On August 20, 2026, the prosecution changed posture at the trial-court level. The public disposition reflects a guilty plea to an amended misdemeanor disorderly-conduct count, dismissal and read-in of Counts 2 through 5, stipulated restitution of $4,250, and a $500 fine plus costs. Ex. B.

48. Plaintiff filed a notice of intent to pursue postconviction relief on August 24. He does not characterize the disposition as favorable termination and does not ask this Court to invalidate the conviction.

49. During plea negotiations on August 20, defense counsel proposed one amended disorderly-conduct count without read-ins. The prosecutor rejected that narrower proposal and wrote: "No, we have to dismiss and read in everything, especially if Count 1 is amended to a DC. I would get a complaint to the board from the victim if we give the case away." Ex. A at 4.

50. The quoted government communication establishes that the prosecutor expressly considered an anticipated licensing-board complaint from the complaining witness when rejecting the proposed narrower disposition. It does not, standing alone, establish a prior threat by White or an express agreement between White and the State.

51. The email nevertheless places complaint-channel pressure inside the documented criminal-resolution calculus. That fact is material because Plaintiff's own OLR, DSPS, Judicial Commission, preservation, and provider-related activity had already been treated as adverse material in overlapping proceedings.

52. The criminal process also carried concrete liberty and financial consequences, including cash bond, attorney expense, restitution, fine and costs, and the risk of incarceration or probation that defense counsel was attempting to avoid. Exs. A-B.

53. Plaintiff pleads these facts as part of the alleged retaliatory use of governmental process. He does not presently plead a federal malicious-prosecution count because the conviction remains outstanding.

## VII. DOCUMENTED COORDINATION AND THE STATE-ACTION THEORY

54. The existence of communications among Sarah Fox, White, and Anderson is not speculative. The state-court record documents those communications as described above.

55. The record documents that White supplied information to Anderson before contempt litigation; that Sarah Fox communicated with White and received Plaintiff's DSPS complaint from White; that White and Sarah continued to communicate after the licensing issue; and that White's provider employment intersected with the children's Pathways/PSG treatment. Dkt. 1 ¶¶127-134, 163-176.

56. The later prosecutor email adds a state-side fact: during criminal plea negotiations, the prosecutor expressly identified an anticipated board complaint from the complaining witness as a consideration affecting the State's resolution position. Ex. A.

57. Plaintiff does not contend that communication with police, participation in litigation, or reporting misconduct automatically converts a private person into a state actor. The state-action theory is narrower: the documented sequence, communications, and use of complaint and enforcement channels support an inference that certain private actors and state actors acted in concert with respect to retaliatory use of process against protected petitioning activity.

58. Plaintiff recognizes that § 1983 requires more than a conclusory conspiracy allegation. Liability against a private defendant under Count I therefore depends on proof of an agreement or joint participation with a state actor in the particular retaliatory act, not merely on friendship, employment, testimony, reporting, or success in state court.

59. Judicial rulings themselves are not pleaded as the agreement. Plaintiff seeks no damages from Smathers or Iverson for protected judicial acts.

## VIII. COUNT I - FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983

60. Plaintiff realleges paragraphs 1 through 59.

61. Plaintiff engaged in petitioning and reporting activity protected by the First Amendment to the extent recognized by governing law, including court filings and appeals, complaints to governmental oversight and licensing bodies, preservation notices, provider-conflict objections, and requests for access to records.

62. The record establishes that relevant participants knew of that activity. Anderson acknowledged OLR-related notice and White-related information; Sarah Fox testified concerning Plaintiff's DSPS complaint; White discussed Plaintiff's licensing reports; and provider and police processes incorporated the same preservation and reporting subjects. Dkt. 1 ¶¶102-106, 127-134, 163-176, 192-198, 253-280.

63. Plaintiff experienced adverse processes and consequences after and in connection with that protected activity, including contempt proceedings, repeated police reporting and enforcement activity, use of provider-directed preservation communications in the criminal track, impairment of records access, cash-bond and criminal litigation burdens, and other litigation and financial consequences.

64. The August 20 prosecutor email is direct evidence that anticipated complaint-channel pressure from the complaining witness entered the State's plea-resolution calculus. Ex. A. It is not pleaded as proof of an express conspiracy standing alone.

65. Taken together, the documented chronology supports the inference that protected petitioning activity was not merely background to the adverse processes but was itself repeatedly identified, transmitted, characterized as harassment or intimidation, and used within overlapping enforcement and litigation channels.

66. The described consequences would deter a person of ordinary firmness from continuing protected petitioning and reporting activity.

67. Liability under this Count is asserted only against a defendant whose conduct was under color of state law, including a private defendant only if the factfinder concludes that the defendant was a willful participant in joint action with a state actor directed at the alleged retaliation.

68. This Count does not seek damages for a judicial ruling as such, does not seek damages from a prosecutor for plea negotiations, and does not seek a determination that the Wisconsin conviction is invalid.

69. To the extent adjudication of a separable damages component would necessarily imply the invalidity of the conviction, Plaintiff does not seek present adjudication of that component. To the extent Younger requires abstention from a separable damages component while postconviction proceedings remain pending, Plaintiff requests a stay rather than dismissal.

## IX. COUNT II - WISCONSIN TREATMENT-RECORD ACCESS, WIS. STAT. § 51.30(9), AGAINST PSG

70. Plaintiff realleges paragraphs 1 through 45.

71. Wis. Stat. § 51.30(5)(b) provides a parent of a minor the same treatment-record access rights as the subject individual, subject to the statute's exceptions and privileges. Section 51.30(5)(bm) removes those parental rights when the parent has been denied periods of physical placement under Wis. Stat. §§ 767.41(4)(b) or 767.451(4).

72. Section 767.41(7)(a) separately provides, subject to paragraph (b) and contrary court order, that a parent has access to a child's medical records regardless of legal custody.

73. Section 51.30(9) creates a civil action for violations of § 51.30 and authorizes proven damages, statutory exemplary damages where applicable, costs and attorney fees, and injunctive relief or an order compelling compliance.

74. Plaintiff maintains that he has not been denied periods of physical placement under Wis. Stat. §§ 767.41(4)(b) or 767.451(4), the provisions identified in Wis. Stat. § 51.30(5)(bm), and that the operative order provides supervised physical placement.

75. PSG possessed Michael's records, initially indicated on September 2 that after clarification it could begin assembling them, received a detailed request on September 3, and then issued a categorical written denial requiring an explicit certified circuit-court order. Exs. F-G.

76. Plaintiff had already pursued authorizations, legal authority, protective conditions, neutral custodians, and court-directed release procedures before PSG issued that denial. Exs. C-E, H.

77. Plaintiff does not claim an unrestricted right to psychotherapy notes, privileged material, or information lawfully withheld under an applicable federal or state exception. The claim concerns the requested non-exempt treatment, intake, referral, administrative, authorization, disclosure, and related records to which the statutory parental access provisions apply.

78. PSG's invocation of 45 C.F.R. § 164.502(g)(5), professional judgment, safety, privilege, or any other lawful exception presents a defense to be

applied to the actual facts and requested categories. The September letter did not identify the specific court order that PSG contended independently prohibited all access.

79. To the extent PSG violated § 51.30 by withholding records to which Plaintiff possessed a statutory right of access, Plaintiff seeks the remedies authorized by § 51.30(9).

## X. RETALIATORY MISUSE OF PROCESS; CLAIMS NOT PRESENTLY ASSERTED

80. The documented criminal, injunction, contempt, police-report, and records-access sequence is pleaded as part of the First Amendment retaliation theory and as evidence of alleged retaliatory misuse of governmental process.

81. Plaintiff does not presently plead a stand-alone federal malicious-prosecution count because the existing conviction creates a current favorable-termination and Heck barrier. This omission is procedural and is not an admission concerning probable cause, motive, reporting conduct, or the lawfulness of independently actionable acts surrounding the prosecution.

82. Plaintiff does not presently plead a stand-alone Wisconsin abuse-of-process count because Wisconsin law requires not only an ulterior purpose but a subsequent misuse of issued process to obtain a collateral advantage. Plaintiff preserves the documented process facts and does not concede that every use of process described above served a proper purpose.

83. Plaintiff does not plead a stand-alone civil-conspiracy count. Joint action is used only as the state-action mechanism described in paragraphs 54 through 59.

84. Plaintiff does not seek sanctions or a finding that any person committed a crime, corruption, or professional misconduct through this pleading.

## XI. DAMAGES AND RELIEF

85. Plaintiff seeks compensatory damages against nonimmune defendants for proven independent injuries caused by actionable conduct, including litigation impairment, records-process injury, lost income or employment-related loss to the extent causally proven, increased litigation expense, and other legally recoverable loss.

86. Plaintiff seeks nominal damages for any proven constitutional violation for which compensatory damages are unavailable or unproven.

87. Plaintiff seeks punitive damages only against an individual defendant if the governing federal or state standard is satisfied.

88. On Count II, Plaintiff seeks the remedies authorized by Wis. Stat. § 51.30(9), subject to proof and any valid defense.

89. Plaintiff seeks prospective or declaratory relief only to the extent it addresses an ongoing independent injury and does not require this Court to review, alter, or supervise a Wisconsin judgment.

90. Plaintiff does not seek double recovery for any injury also at issue in Case No. 26-cv-772.

## XII. JURY DEMAND

91. Plaintiff demands a jury trial on all issues so triable.

Dated this 21st. day of September, 2026,

Respectfully submitted,

Mathiew Rae Fox,
Plaintiff Pro Se
2726 83rd St.
Kenosha, WI 53143
(262) 203-3109
Mathiew.fox@gmail.com